IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 09, 2014

## IN RE: GLENN J., ET AL.[1]

**Appeal from the Chancery Court for Sumner County**
**No. 2012AD4      Tom E. Gray, Chancellor**

**No. M2013-01803-COA-R3-PT - Filed April 30, 2014**

Father of two children appeals the termination of his parental rights on the grounds of abandonment by failure to support and the finding that termination of his parental rights would be in the best interest of the children. Finding no error we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and ANDY D. BENNETT, J., joined.

Patti B. Garner, Gallatin, Tennessee, for the appellant, Michael G.

M. Allen Ehmling and Elizabeth R. McClellan, Gallatin, Tennessee, for the appellees, Tracy J. and Shannon J.

### OPINION

**I. HISTORY**

Michael G. ("Father") and Tracy J. ("Mother") are the biological parents of two children, Glenn J., born December 2003, and Allen J., born May 2006; Mother and Father have never been married. Mother was married to Shannon J. ("Stepfather") from 1996 to 2005; they remarried in 2009.

On February 21, 2012 Mother and Stepfather filed a petition to terminate the parental rights of Father to both children and to allow Stepfather to adopt them. The petition alleged

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

that Father had abandoned the children by failing to visit or support as provided in Tenn. Code Ann. § 36-1-113(g)(1), and contended that adoption would be in the children's best interest.

A hearing on the petition was held on June 4, 2013 and by order entered July 15 the court terminated Father's parental rights on the ground of abandonment by failure to support. In the order, the court made the following findings of fact:

1. This matter is before the Court upon Petition for Involuntary Termination of Parental Rights and Adoption of Minor Children.

2. This is a step-parent adoption of two (2) children, Glenn J. born on the 16th day of December, 2003 and Allen J. born on the 11th day of May, 2006.

3. [Mother] is the biological and legal mother of both children.

4. [Mother] married [Step-father] on the 28th day of December 1996. This was their first marriage to each other.

5. Glenn J. was born during the first marriage of [Mother] and [Step-father].

6. [Mother] and [Step-father] were divorced by Final Decree on the 21st day of December, 2005.

7. [Mother] and [Step-father] remarried on the 28th day of December 2009.

8. Allen J. was born while [Mother] and [Step-father] were divorced.

9. [Father] petitioned the Juvenile Court for Sumner County, Tennessee to declare him the father of both children. DNA testing was ordered and Michael G. was declared to be the father of both children, Glenn and Allen. The Juvenile Court for Sumner County issued an Order for child support at $65.00 per week to be paid by [Father].

10. [Father] was awarded parenting time for four hours every other Sunday in 2010. No change has been made in parenting time.

11. Counsel for [Father], through testimony of [Mother], caused to be entered a one page print out showing payments in child support starting from 5/07/2007 and ending 11/07/2011. Exhibit 2 is incomplete. Exhibit 2 shows eleven (11) payments in 2007, two (2) substantial payments in 2008, three (3) payments in 2010 and four (4) payments in 2011. By Exhibit 2 $2,311.20 was paid. By Exhibit 2 [Father] made payments totaling $1,809.85. No payments are shown for 2009. In 2010 $825.00 was paid, and for 2011, $380.00 was paid. By testimony the Court finds that [Father] made three payments in 2010. At $65.00 per week, he should have paid $3,380.00 each year. For the relevant

2

four months he paid two (2) payments in October, 2011. By clear and convincing evidence he willfully failed to pay child support. He was working.

12. [Father] was incarcerated in the Sumner County Jail in November, 2011. Testimony of [Mother] was that he was out of jail in February, 2012. Testimony was that [Father] called [Mother] in February 2012.

Father appeals raising the following issues:

1. Whether the Court abused its discretion when entering an Order terminating the parental rights of the Appellant;
2. Whether the Court erred by failing to sustain an objection made by Appellant's counsel, which gave rise to the Court terminating the parental rights of the Appellant; and
3. Whether the Court erred in granting the termination of parental rights and adoption, by failing to protect the best interest of the minor children.

## II. STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174–75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statues identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366–67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 766–69; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W.3d at 546. In light of the heightened standard of proof in these cases,

3

a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## III. DISCUSSION

### A. Failure to Support

Father acknowledges his failure to pay support but contends that his failure was not willful because he has not been "regularly, gainfully employed" since 2009.

Tenn. Code Ann. § 36-1-113(g)(1) designates "abandonment," as defined in Tenn. Code Ann. § 36-1-102, as a ground for terminating parental rights. Tenn. Code Ann. § 36-1-102(1)(A)(i) defines "abandonment" in part pertinent to this issue as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) . . . have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Father was incarcerated from a date in November 2011 to a date in February 2012. Applicable to our analysis, then, is Tenn. Code Ann. § 36-1-102(1)(A)(iv) which provides that the definition of abandonment includes:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

4

In order to find "abandonment," there must be a "willful" failure to render support by the parent whose rights are being terminated. *See In Re Swanson,* 2 S.W.3d 180, 184–85 (Tenn. 1999). As found by the court in *In re S.M.*, 149 S.W.3d 632 (Tenn. Ct. App. 2004), "willfulness" in parental rights cases does not require the same standard of culpability required by the penal code nor does it require malevolence or ill will. *Id.* at 642. Failure to pay support under the termination statutes is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *Tenn. Dep't. of Children's Servs. v. Calabretta*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (citing *In re Adoption of Muir*, 2003 WL 22794524 (Tenn. Ct. App. Nov. 25, 2003)).

Evidence of Father's payment of support included a record from the Tennessee Department of Human Services and Father's testimony. The Department's record shows from October 2011to January 2012 - the four months immediately preceding the filing of the petition -Father made four payments, and that in the four months prior to his November 2011 incarceration he made only the two October payments.[2]

With respect to the determination that his failure to pay was willful Father testified that he was aware of his duty to support and that, prior to going to jail in November of 2011, he was employed in Portland, Tennessee, for "about three or four months" and for a temporary agency for "about a month" prior to the Portland job. He offered no reason for failing to pay support during the period he was working. The record supports a finding that Father had the capacity to provide support during the relevant time periods and does not support his contention that his failure was not willful within the meaning of the pertinent statutes.

---

[2] With respect to the payments made in the four months immediately preceding the filing of the petition, the trial court found that:

> The payment of child support has been token. For the year 2010 he made three payments totaling $825.00. For 2011 he made four child support payments for a total of $380.00, two were in October and two were in November 20[11]. The four dates in 2011 when he paid two payments were on October 19, 2011 and two payments on November 7, 2011.

Father has not specifically challenged this finding on appeal; notwithstanding, we have reviewed the record and affirm the holding that these payments, in light of all the circumstances, are token and do not preclude a finding of willful failure to support. *See* Tenn. Code Ann. § 36-1-102(1)(B)("For purposes of this subdivision (1), 'token support' means that the support, under the circumstances of the individual case, is insignificant given the parent's means.")

**B. Father's Objection to Certain Testimony**

Father next takes issue with the trial court allowing Mother to testify, over his objection that the testimony was not relevant, that Father had made four child support payments since the filing of the petition. He asserts that the testimony "may have been considered" when the court terminated his rights.

The admissibility of evidence is within the sound discretion of the trial court, and we will not overturn the trial court's decision without proof that the trial court abused its discretion. *Mercer v. Vanderbilt Univ. Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is contrary to logic or reasoning and that causes an injustice to the party complaining. *Id.* (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

We have reviewed the testimony in the context in which it was given and fail to find that the court abused its discretion in allowing it. Father does not contend that he was prejudiced by the testimony and there is no indication in the record that the court relied upon Father's record of payments after the petition was filed for any purpose. This issue is without merit.

**C. Best Interest**

Once a ground for termination has been proven by clear and convincing evidence, the court must then determine whether it is the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. The Legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[3] The list of factors is not exhaustive, and the statute

---

[3] The factors at Tenn. Code Ann. § 36-1-113(i) are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dep't of Children's Servs. v. T.S.W.*, 2002 WL 970434 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, 2006 WL 3077510 (Tenn. Ct. App. Oct. 31, 2006)).

The trial court made a finding as to each of the factors at Tenn. Code Ann. § 36-1-113(i). With respect to many of the factors, the court noted the challenges Father was having in meeting his own needs and providing for himself; significant to the trial court was the fact that Father had not obtained the stability of a home in five years, that he had not established a meaningful relationship with the children, that Father was only able to meet the bare necessities for himself, and that he suffered from depression and was on medication.

We have reviewed the testimony cited by Father in support of his argument that termination of Father's rights was not in the best interest of the children. The testimony relates primarily to Father's contention that Mother, Stepfather and Step-Grandmother interfered with his relationship with the children; other testimony conflicts with findings made by the trial court.

Where there is conflict in testimony, the trial court is in a superior position to observe the demeanor of the witnesses and evaluate their credibility. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). As a result, we afford "considerable deference" to the trial court's findings of credibility and the weight to be given testimony. *Cutler-Hammer v. Crabtree*, 54 S.W.3d 748, 753 (Tenn. 2001).

---

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

The testimony established by clear and convincing evidence that termination of Father's parental rights is in the best interest of the children.[4]

## VI. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court terminating Father's parental rights.

_____
RICHARD H. DINKINS, JUDGE

---

[4] While Father focuses on his relationship with the children, the quality of the relationship between the parent and the child is just one of the factors to be considered by the court.